Ricky Lee JOHNSON *v.* STATE of Arkansas

CR 88-193                                    772 S.W.2d 322

Supreme Court of Arkansas
Opinion delivered June 19, 1989
[Rehearing denied July 17, 1989.*]

*John W. Walker, P.A.*, for appellant.

*Purtle, J., would grant rehearing. Newbern, J., not participating.

*Steve Clark*, Att'y Gen., by: *Olan W. Reeves*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. The appellant Ricky Johnson appeals from his conviction of two counts of burglary and two counts of rape from two separate jury trials.[1] In addition, the appellant entered a conditional guilty plea to two additional counts of rape and burglary. Under A.R.Cr.P. Rule 24.3(b), the appellant reserves his right to withdraw his guilty plea if he should succeed in this appeal. From his convictions, the appellant was sentenced to a total of life plus fifty-seven (57) years. For reversal, appellant argues that the trial court erred in denying his motion to suppress his statement to the police and his fingerprints. Appellant makes the following two arguments in support of his motion to suppress: 1) he was not properly informed of his *Miranda* rights; and 2) the stop of his vehicle by the police was pretextual. We affirm.

On August 22, 1987, at 3:24 a.m., Officer Eric Higgins observed the appellant's car going northbound in an alley that also serves as an entrance to an apartment complex parking lot. Officer Higgins was aware that some rapes had occurred in this area around this same time of morning a month earlier. Higgins also knew the police had received a suspicious person report, which reflected that on July 26, a 1978 Chevrolet Camaro had been seen in the same alley at 2:40 a.m., and on this same occasion, a black male was seen wandering around the apartments. Recognizing that appellant's car matched the vehicle described in the earlier report, Officer Higgins followed the appellant in order to identify his car's license tag number. The appellant then began making quick turns without the use of his turn signal. The officer eventually determined appellant's tag number matched the one in the report, and he had the appellant pull over his car and stop. The only identification the appellant could produce was a labor card which bore no picture. Officer Higgins put the appellant under arrest for failure to present a driver's license and failure to use a left turn signal. The officer

---

[1] We note that the record on appeal is void of any order officially consolidating the appeals from these two trials, even though the cases were tried under the same case number. Since the issues before this court affect both of these trials, we consolidate the cases upon our own motion pursuant to Ark. R. App. P. 3(c).

testified that he could not just issue a citation to the appellant because the appellant had no proper identification. Police department policy, he said, required him to take persons without proper identification to detention.

After the proper arrest report was filed, the appellant was questioned by Detective Jones, who was investigating the rapes that had occurred in the area where the appellant had been stopped. The appellant was informed that he was a suspect in the rapes and was read his rights. The appellant made a statement in which he confessed to raping one of the prosecutrixes, and this statement was used as evidence in the first jury trial. After making his statement, the appellant was fingerprinted. These prints were found to match the prints in the home of one of the victims and were introduced as evidence in the second jury trial.

The trial court eventually severed appellant's charges to permit two trials, but before doing so, it conducted certain pre-trial hearings. Pertinent to this appeal, the trial court considered appellant's motion to suppress, which the court initially granted at the end of an omnibus hearing on May 6, 1988. Another hearing on May 12, 1988 was held on the issue of whether the appellant's fingerprints should be suppressed based on the fruit of the poisonous tree doctrine. The trial judge ruled that the fingerprints would be admissible. Apparently learning of this court's decision in *Mitchell* v. *State*, 295 Ark. 341, 750 S.W.2d 936 (1988), which was handed down on May 2, 1988, the state requested another hearing to present further testimony. The trial court granted the state's request and at a hearing on June 6, 1988, the trial judge reversed his earlier decision and denied the appellant's motion to suppress.

In reviewing the appellant's first argument for the granting of a motion to suppress, we note that the *Miranda* rights form used was the exact form we found to be deficient in *Mayfield* v. *State*, 293 Ark. 216, 736 S.W.2d 12 (1987). We have held this rights form to be deficient because it does not inform the accused that if he is indigent, an attorney will be appointed to represent him. After *Mayfield*, we decided *Mitchell*, 295 Ark. 341, 750 S.W.2d 936, which held that the officer's testimony that he told Mitchell that an attorney would be appointed for him if he could not afford one cured the deficient rights form. *See also Hurst* v.

*State,* 296 Ark. 448, 757 S.W.2d 558 (1988).

   ■■  In the present case, Officer Jones testified at the May 6 omnibus hearing that during the reading of the rights, the appellant made a statement that "he did not want a public defender, and that whenever he needed or wanted an attorney, he would hire his own." During the June 6 omnibus hearing, the trial judge was informed that the appellant had been represented by a public defender in connection with a previous charge. The appellant's statement, we hold, is sufficient to cure the deficient rights form. Combined with the appellant's previous experience with a public defender, the statement shows that the appellant readily knew that he had the right to have an appointed attorney if he could not afford to hire one on his own. While the appellant denies having made such a statement, such is a matter of credibility and we have stated that such matters are best determined by the trial judge. *Jones* v. *State,* 296 Ark. 135, 752 S.W.2d 274 (1988).

   ■  Likewise, we disagree with the appellant's contention that the police made a pretextual stop. Although the appellant was charged with a traffic violation when he was taken to the police station, the record reflects that the police had probable cause to stop and to detain the appellant for the rape cases. *See Addison* v. *State,* 298 Ark. 1, 765 S.W.2d 566 (1989). Probable cause is defined as a reasonable ground of suspicion supported by circumstances sufficiently strong enough in themselves to warrant a cautious man to believe that a crime has been committed by the person suspected. *Id.* In *Addison,* this court affirmed the defendant's detention by concluding that there was probable cause because he was seen in the same area and at approximately the same time as the rapes under investigation had occurred, he met the description of the rapist, he had no identification, and he gave the officers several reasons for being in the area.

   ■  The situation here is similar to the one in *Addison.* The appellant was stopped in the same area and at approximately the same time as the rapes under investigation had occurred, his car was the car identified in the suspicious person report filed one month earlier, he took evasive action when the police car approached, he had no identification, and he met the general description of the rapist. We believe the above factors establish

probable cause to stop and detain the appellant for investigation of the rape cases.

For the reasons stated above, we affirm.