[No. B086841. Second Dist., Div. Six. May 31, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
RALPH HELMUT NITSCHMANN, Defendant and Appellant.

■■■■■■■■■

■■■■■■■■

■■■■■■■■■

## COUNSEL

Creig Alan Dolge for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, John R. Gorey and Akram A. Awad, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**YEGAN, J.**—Ralph Helmut Nitschmann has led a life of crime. The probation report shows a 20-year history of offenses not counting his "lengthy juvenile criminal history." We count 17 separate adult arrests. Based on his prior contacts with law enforcement, television, or other sources, appellant has committed the basic rules of *Miranda* (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]) to memory even though he may not have mastered its subtleties. His recitation of the basic rules of *Miranda* after arrest in this case formed an adequate basis for the trial court to rule that his inculpatory statements were admissible in evidence. We affirm the judgment.

Appellant was convicted in a jury trial of assault by means of force likely to produce great bodily injury. (Pen. Code, § 245, subd. (a)(1).) The trial court found that appellant had previously served a prison sentence within the meaning of Penal Code section 667.5, subdivision (b). He was sentenced to state prison for the upper four-year term on the substantive offense, plus one additional year for the prior prison term.

He appeals contending that "[t]he trial court should have excluded statements obtained in violation of appellant's *Miranda* rights" and that it ". . . erred in not granting appellant's motion to dismiss a great bodily injury allegation pursuant to Penal Code section 1118.1."

Judy Gompf testified that she saw appellant beat a man, later identified as George Campbell, in the parking lot outside the Calypso Restaurant in Santa Barbara. Appellant delivered seven to eight blows to Campbell's face and stomach. Campbell fell limp and did not fight back. Appellant grabbed Campbell by the back of the head and rammed his head into an automobile four or five times. Campbell dropped to the ground and appellant repeatedly kicked him. Campbell had a large gash down the side of his face and was bleeding profusely. He was taken to the hospital and treated.

James Reagan testified that appellant and Campbell attended a party at Reagan's house and left together to go "bar hopping." Later that evening, appellant returned and bragged about beating Campbell.

Appellant was arrested for the offense and interviewed on tape by Detective Roger Aceves of the Santa Barbara Police Department. Appellant claimed that he had an alibi but later admitted beating Campbell. Appellant told Detective Aceves that he and Campbell went drinking and got "pretty blitzed." Appellant admitted that he beat Campbell because Campbell insinuated that appellant was homosexual. Appellant told Detective Aceves that he would deny everything if criminal charges were filed.

### *Miranda*

■ Appellant contends that the trial court erred in admitting his taped statement into evidence. Detective Aceves testified that appellant interrupted him when he tried to read appellant his *Miranda* rights. According to the detective, "Mr. Nitschmann actually read the waiver back to me verbatim." We set out the apposite portion of the transcript of the tape recording:

"ACEVES: . . . I want you to tell me what happened. Think about it for a minute. I know you've been arrested before, so you know the procedure. First I have to read you your rights, you understand your rights.

"NITSCHMANN: Hmm.

"Aceves: Okay?

"NITSCHMANN: Well, I was over at the guy's house . . .

"ACEVES: Okay, hold on. Hold on. Let me, let me read you this first and then we'll talk about what happened.

"NITSCHMANN: I have the right to remain silent, anything I say, if I say can and will be used against me in a court of law. I have the right to an attorney, if I cannot afford one, one will be appointed to me by the State. I know the whole bit. And this house where I was at . . .

"ACEVES: Okay, you understand your rights then?

"NITSCHMANN: Yeah.

"ACEVES: You understand that you have a right to speak to an attorney?

"NITSCHMANN: Hmm, hmm. And the guy's house I was at was an attorney and him [James Reagan] and his girl and any other people that were there would say I was there.

"ACEVES: Okay, so you will talk to me?

"NITSCHMANN: So, I have an alibi.

"ACEVES: Okay. So you understand your rights?

"NITSCHMANN: Yeah.

"ACEVES: Okay. Having those rights in mind, do you want to talk to me about this, right? Yes or no? __ know about it.

"NITSCHMANN: Yeah.

"ACEVES: Do you want to talk to me? Yes or no?

"NITSCHMANN: Okay."

At trial appellant claimed that the statement was inadmissible because Detective Aceves failed to advise him that he had the right to have an attorney present *during* the questioning by Detective Aceves. The trial court disagreed and ruled that ". . . it's very clear to me that there was a knowing and intelligent waiver of all of the defendant's constitutional rights. [¶] You know, sometimes this so-called Miranda advisement becomes a kind of ritual where the officer just blabs by rote those warnings, and I suspect the defendant sits there with eyes glazed over and maybe comprehends and maybe doesn't. That's not the case here. [¶] In this case the defendant

literally took over and said, 'Yeah, I understand.' And he repeated them. I can't imagine any clearer expression of his understanding and waiver of his rights than what we have in this case. [¶] So the motion is denied."

■ *Miranda* v. *Arizona, supra,* 384 U.S. 436, 478-479 [16 L.Ed.2d 694, 721-727] holds, inter alia, that the police must advise a suspect of the right to "the presence" of an attorney "before" and "during" questioning, and that if he cannot afford an attorney one will be appointed. (See also *People* v. *Wash* (1993) 6 Cal.4th 215, 236 [24 Cal.Rptr.2d 421, 861 P.2d 1107].) The warning serves a "prophylactic purpose" (*Michigan* v. *Tucker* (1974) 417 U.S. 433, 446 [41 L.Ed.2d 182, 194, 94 S.Ct. 2357]) but need not be presented in any "precise formulation" or "talismanic incantation." (*California* v. *Prysock* (1981) 453 U.S. 355, 359 [69 L.Ed.2d 696, 701, 101 S.Ct. 2806].) In *Duckworth* v. *Eagan* (1989) 492 U.S. 195, 202 [106 L.Ed.2d 166, 176, 109 S.Ct. 2875] the Supreme Court observed that "[w]e have never insisted that *Miranda* warnings be given in the exact form described in that decision."

In California, the rule is the same. "The essential inquiry is simply whether the warnings reasonably ' "[c]onvey to [a suspect] his rights as required by *Miranda*." ' [Citation.]" (*People* v. *Wash, supra,* 6 Cal.4th at pp. 236-237.) A reviewing court need not examine the *Miranda* warnings as if it were construing a will or defining the terms of an easement. (*People* v. *Kelly* (1990) 51 Cal.3d 931, 948-949 [275 Cal.Rptr. 160, 800 P.2d 516].) Yet, this is exactly what appellant asks us to do.

■ Appellant indicated he was aware of his *Miranda* rights and waived them. The fair import of his statement is that he knew about his right to have an attorney present during questioning. The trial court impliedly, if not expressly, so found. No evidence was presented that appellant was confused, misled, or reluctant to talk about the incident. The record unquestionably demonstrates to the contrary. Detective Aceves was not required to repeat the *Miranda* admonition or quiz appellant about his right to have an attorney present during questioning.

There is no question that appellant's self-admonition did not expressly recite that he was entitled to the presence of an attorney before and during questioning. That is to say, there was no self-admonition as to *when* an attorney would be provided. However, the dialogue between the detective and appellant reasonably shows that he was aware of his right to counsel then and there. Appellant could not wait to speak to the detective. He repeatedly interrupted and talked about his alibi. Thereafter, Detective Aceves asked him, "[y]ou understand that you have a right to speak to an

attorney?" This was not qualified as to some future time. A reasonable person would believe that he or she had the right to counsel at that time.

Appellant nevertheless contends that interrogating police officers must admonish everyone, including those who recite the *Miranda* rules sua sponte, regardless of their knowledge of *Miranda.* According to appellant, if the arrestee is an attorney, a judge, or even the Chief Justice of the Supreme Court, the admonition must be given. We agree in part. The admonition must be given to everyone. This serves the prohylactic purpose of *Miranda* which itself indicates: "No amount of circumstantial evidence that the person may have been aware of this right will suffice to stand in its stead. Only through such a warning is there ascertainable assurance that the accused was aware of this right." (*Miranda* v. *Arizona, supra,* 384 U.S. at pp. 471-472 [16 L.Ed.2d at p. 722].) Thus those who know the *Miranda* rules, including "con-wise" arrestees such as appellant, are entitled to the admonition. But a rule excluding otherwise voluntary statements after the arrestee admonishes himself on the record would do violence to common sense. Here there was direct evidence that appellant was aware of his *Miranda* rights before talking to the police. This is the goal of *Miranda.* Where, as here, the reason for the rule is satisfied, the rule should not operate in an overly technical way to exclude relevant evidence.

We decline appellant's invitation to exalt form over substance. A suspect may not "out Mirandize" the police by reciting his *Miranda* rights before the officer has admonished him and later claim the admonition was defective. ■ " '[T]he trial court's ruling on a *Miranda* issue may not be set aside by us unless it is *"palpably erroneous."* A ruling palpably erroneous is one lacking support of substantial evidence. [Citation.]' " (*In re Eric J.* (1979) 25 Cal.3d 522, 527 [159 Cal.Rptr. 317, 601 P.2d 549].) ■ The record here supports the trial court's finding that appellant knew, as he would say, "the whole bit," i.e., that he understood his *Miranda* rights and voluntarily waived those rights.

## Motion to Dismiss

Appellant also contends that the trial court erred when it denied the motion to dismiss the great bodily injury enhancement. (Pen. Code, §§ 1118.1, 12022.7.) Photographs of the injuries inflicted and the medical records were introduced into evidence. Although far from compelling, the evidence was sufficient to support a "great bodily injury" finding. The jury thereafter found the enhancement not true.

Appellant asserts that the enhancement "distracted" the jury and caused a compromise verdict. Assuming, without deciding, that Penal Code section

1118.1 applies to an enhancement, we disagree with this speculative claim. Appellant has not demonstrated, as a matter of law, that he was unfairly convicted. Error is never presumed and appellant has the burden to show error. He has not done so.

The judgment is affirmed.

Stone (S. J.), P. J., and Gilbert, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 30, 1995.