994 A.2d 526 (2010)
413 N.J. Super. 196
STATE of New Jersey, Plaintiff-Respondent,
v.
Orion T. BRABHAM, a/k/a Theron Brabham, Jason Brandon, Orion Theron, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted September 22, 2009.
Decided April 30, 2010.
*527 Yvonne Smith Segars, Public Defender, for appellant (Karen E. Truncale, Assistant Deputy Public Defender, of counsel and on the brief).
Wayne J. Forrest, Somerset County Prosecutor, for respondent (Eric Mark, Assistant Prosecutor, on the brief).
Appellant filed a pro se supplemental brief.
Before Judges GRALL, MESSANO and LeWINN.
The opinion of the court was delivered by
GRALL, J.A.D.
A jury found defendant Orion T. Brabham guilty of second-degree burglary, N.J.S.A. 2C:18-2a(1), b(1), second-degree robbery, N.J.S.A. 2C:15-1a, and fourth-degree theft, N.J.S.A. 2C:20-3a. The judge merged defendant's conviction for theft with his convictions for burglary and robbery, granted the State's motion for sentencing as a persistent offender on the robbery conviction, N.J.S.A. 2C:44-3a, and sentenced defendant to a ten-year term of imprisonment for burglary and a concurrent eighteen-year term for robbery. Both sentences are subject to terms of parole ineligibility and parole supervision required by the No Early Release Act, N.J.S.A. 2C:43-7.2. The judge also imposed the appropriate fines, penalties and assessments.
Defendant primarily objects to the denial of his motions to suppress physical evidence seized by a New York parole officer during a search of his home and statements he made to New Jersey law enforcement officers. Accepting the judge's factual findings, we conclude that the physical evidence was properly admitted but the statements defendant made during a meeting he requested to negotiate a plea should have been excluded pursuant to N.J.R.E. 410.

I
At about half-past eight on the morning of February 21, 2006, Catherine Zahos heard a noise on the second floor of her home, which is located on Martinsville Road in Basking Ridge. After she called upstairs to find out who or what she had heard, a man she did not know ran down the staircase carrying a bundle. As he reached Zahos, he grabbed her hair and necklace, pushed her head down, dragged her to the living room and forced her to the floor. Threatening to kill her, he demanded money. He then went to the kitchen to get cash from her purse. Zahos followed and was again knocked to the floor. The intruder left with the bundle, but Zahos went outside and saw him leave in a green Altima with a New York license plate. An employee working in the Zahos family business, which is located behind the residence, also saw the man leaving with a bundle in a green Altima with a New York license plate.
When the police arrived at the Zahos home, they found damage to the rear door of the house leading from a breezeway to the kitchen and a piece of the broken lock on the kitchen floor. Zahos was shaking, smoking a lot and appeared to be "very distraught." The police were not able to obtain a fingerprint with sufficient detail to permit identification of a suspect. According *528 to Zahos, jewelry, including a gold medallion with a starburst design on one side and a depiction of the Parthenon on the other, as well as rings, pins and crosses were taken. In addition, a .38 caliber handgun and a comforter were missing. Neither Zahos nor her employee was able to give more than a general description of the intruder or provide the number of his New York license plate.
Others saw a green Altima with a New York license plate in the vicinity of the Zahos home on the morning of the burglary. Cheryl Himmelrich, who lives about a five-to-ten minute drive from the Zahos property, was outside with her Labrador Retriever and approached the driver of a blue-green Altima with a New York license plate who backed into her driveway. He left after asking her about a family that did not live on her street. On the same morning, Debra Albanese was driving to work via Martinsville Road. She noticed a green Altima with New York plates in front of her car because it was being driven at varying speeds and saw the driver turn into a driveway and toward the back of the house. The following day, in response to a flier distributed by police stationed near that driveway, Albanese reported what she had seen.
None of these witnesses could identify defendant as the man they saw on the morning of the Zahos home invasion. The evidence linking defendant to the crimes was a gold medallion identified by Zahos as hers, which was recovered during a search of defendant's home conducted by his parole officer in New York, and statements defendant made to New Jersey law enforcement officers after he was incarcerated as a consequence of violating conditions of his parole in New York.
New Jersey law enforcement officers, who testified at trial, repeated what they recalled about statements defendant made during two meetings. In April 2006, defendant told the officers that they had done their job by finding the person that did this, meaning himself. In May, defendant told the officers that he got the idea to use the back door from a television show, described the odor of smoke in the home of an old lady, "laugh[ed] about the fact that [she] kept getting up and coming back after him," and spoke of an encounter in a driveway with a woman accompanied by a large dog that caused him to abandon his plan to burglarize a home in her neighborhood.
Defendant's testimony at trial contradicted the officers' account of their meetings and his statements. He denied meeting with them in April. Although he acknowledged a meeting in May, he contended that he was transported there from Rikers Island, could not refuse to go and, other than asking for his lawyer, had said nothing.
At trial, defendant also described his background and addressed circumstantial evidence pointing to him as the perpetrator of the Zahos burglary. He is a college graduate with a paralegal certificate and works for a real estate management company in Larchmont. He collects jewelry, is part Greek and acquired his gold medallion while visiting family in Greece. He lives with his wife and daughter. His lawyer introduced a "Navy" ring, which was seized by the parole officer along with Zahos's gold medallion, and defendant testified that the ring was a gift from his father-in-law. He also explained that the Altima is his wife's car, and during the work week she leaves it at a ferry terminal.[1]
*529 The jury found defendant guilty of burglary, robbery and theft of property with a value in excess of $500 but not guilty of taking a gun from the Zahos residence.

II
[At the court's direction, its discussion of defendant's challenges to the search has been omitted from the published opinion.]

III
Defendant contends that the trial judge erred in denying his motion to preclude admission of statements he made after his arrest. On appeal his attorney raises these issues:
II. THE DEFENDANT'S CUSTODIAL STATEMENTS SHOULD HAVE BEEN SUPPRESSED BECAUSE THEY WERE OBTAINED WITHOUT MIRANDA WARNINGS, WITHOUT THE KNOWLEDGE THAT TWO CRIMINAL COMPLAINTS WERE FILED AGAINST HIM, AND WERE GIVEN IN THE CONTEXT OF PLEA NEGOTIATIONS.
A. The failure to administer a complete set of Miranda Warnings requires the suppression of defendant's oral statements.
B. At the May 8, 2006 meeting, the defendant was not told that two new criminal complaints were filed against him.
C. The defendant's statements were made during plea negotiations and therefore were inadmissible.
In addition, defendant has filed a pro se supplemental brief in which he argues:
II. THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS STATEMENTS THAT WERE ALLEGEDLY MADE BY DEFENDANT, WHICH WERE TAKEN AND ADMITTED INTO EVIDENCE BY THE PROSECUTION, IN VIOLATION OF DEFENDANT'S RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND NEW JERSEY'S PRIVILEGE AGAINST SELF-IN-CRIMINATION.
A. The prosecution introduced as evidence statements that were taken absent the required Miranda warnings, which made them inadmissible for use during the prosecution's case-in-chief.
B. Defendant was denied his right to counsel when he was forcibly produced at a New York State District Attorney's office under court order, at the request of New Jersey officials for the purpose of an alleged attorney's conference or plea negotiation without his attorney being notified or present.
C. The court below failed to hold the prosecution to its burden under the New Jersey Rules of Evidence of proving beyond a reasonable doubt that defendant was properly informed of his rights under Miranda before allowing orally made custodial statements to be admitted as evidence of guilt.

A
The evidence relevant to defendant's challenges to the admission of his statements *530 was presented at a pre-trial hearing on defendant's motion to suppress. Detective Jon Burger and Lieutenant Edward Byrnes of the Bernards Township Police Department, Sergeant Sean Brown of the Long Hill Township Police Department and defendant testified. Through sharing information with other law enforcement agencies in New Jersey investigating residential burglaries involving a green Altima, the police suspected defendant committed the crimes against Zahos.
After defendant was arrested as a consequence of the parole search on March 7, 2006, he was taken to the parole office. Byrnes, who was present at the time of the arrest and went to the parole office thereafter, sat near defendant and asked to speak to him. According to Byrnes, defendant said Byrnes could speak to him but he would not say anything. Byrnes advised defendant he would have to read him the warnings required by Miranda, but defendant interrupted, saying that he knew his rights. They had no further conversation that day. By defendant's account, he invoked his right to counsel when Byrnes tried to speak to him.
Burger and Brown returned to the New York parole office to obtain reports on March 22, 2006. By that time defendant had been confined at Rikers Island on his New York sentence. Defendant called the parole office from Rikers Island while the New Jersey officers were there, and he asked to speak to them. According to Burger, he was aware that defendant was represented by an attorney and told defendant he could not speak to him, but defendant replied that his lawyer worked for him, that he wanted to speak to the police directly and agreed to meet with the officers at Rikers Island. By defendant's account, the conversation was about him getting back documents that were not part of a New Jersey case.
Burger and Brown testified that they went to see defendant at Rikers Island on April 20, 2006, but defendant denied ever meeting with the officers at Rikers Island. The officers claimed that defendant cut Brown off when he attempted to advise him in accordance with Miranda. Burger recalled defendant saying, "I know my rights. If I need my attorney at any time I know I can get one. And, you know, I don't need one now, I'm talking to you, essentially." According to Brown, defendant said "whoa, whoa, whoa, I know my rights, I know if I need my attorney, I'll get him."
The officers testified that there was no discussion of the details of the crimes that day and that they did not question defendant. Burger described the exchange as "a very one-sided conversation," in which "[i]t was basically [defendant] laying out everything that he knew." Defendant told the officers that he knew he could get three to five years for each burglary in New Jersey and how the system worked. He said he would talk to them if he could get one "State's Attorney" to go over all of the cases. When Burger warned defendant it might be difficult to get one prosecutor to handle all of the cases because the crimes were committed in different counties and not within the jurisdiction of one county prosecutor, defendant said, "[T]hat ain't your problem, that's their problem. You guys did your job, you guys found the guy that did this, you guys found me. Let them work that out." Brown's recollection of the conversation was similar: when defendant was told that there could be three or four counties involved, defendant assured the detectives it "wasn't [their] problem, that [they] had done [their] job ...[,] found the person that did this."
Both officers recalled defendant being asked for the name of his lawyer. Burger thought Brown got the name, but Brown *531 said he did not and that defendant had told them to go through him. In any event, the officers did not contact defendant's lawyer, and a second meeting was arranged.
The second meeting was held on May 8, 2006 in the office of a New York District Attorney. Burger, Brown, officers from other municipalities in New Jersey, and an assistant prosecutor from Middlesex County attended.
Brown explained that the assistant prosecutor was present because the plan was to discuss the potential for a plea bargain. Burger and Brown gave generally consistent accounts of the May 8 meeting. According to the officers, defendant interrupted efforts to advise him of his rights in accordance with Miranda. Attempts by both Brown and the assistant prosecutor evoked the same response: defendant insisted that he knew his rights and did not need to be advised and said that if he wanted to talk to his attorney he would let them know.
Both officers acknowledged that when defendant told them he knew his rights he also said that his statements would not be on the record. Burger recalled the assistant prosecutor trying to explain. He repeated their dialogue: "[A]nything you tell us here  I know my rights. I know my rights. But this is still off the record." According to Brown, however, the assistant prosecutor told defendant that "nothing was off the record and that it would, in fact, be on the record." Neither officer testified that defendant was told that what he said would be used against him.
Brown and Burger testified that defendant took control of the meeting. He asked each of the officers present where they were from and disclosed information about the crimes in their respective jurisdictions. With respect to the Zahos burglary, defendant mentioned the odor of cigarette smoke in the old lady's house, laughed a little bit and said she kept getting up and he kept pushing her down  she kept coming after him and even followed him outside.
The officers admitted that they asked defendant questions during the meeting. Burger testified that he "asked him about the .38 caliber gun, if there was one particularly taken from the residence and he said no, I don't take guns." Burger also recalled saying something about the lady being "tough," to which defendant responded, "yeah, she kept getting up and kept coming after me." Brown asked defendant if he had "done any other burglaries in the area of Long Hill Township[/]Bernards Township town line," which prompted a response from defendant describing an encounter with a "fellow" walking a dog.
By defendant's account of the May 8 meeting, the assistant prosecutor appeared to be there under the false impression that defendant had asked for the meeting. He had not asked for the meeting, did not want to attend and told all present that they would have to speak to his attorney. After that, the officers outlined the facts of the cases in their respective jurisdictions, but, beyond denying his involvement, he did not say anything. No one attempted to advise him of his rights. Defendant further testified that he knew nothing about New Jersey law and consolidation of cases involving crimes committed in separate counties prior to that meeting, but he also said that he thought the assistant prosecutor intended to work out a resolution of all of the cases in the various counties.
According to the officers, defendant eventually agreed to give a recorded statement in the presence of his attorney and gave them his attorney's name. They attempted to contact the attorney but *532 were unable to reach him. For that reason, defendant did not give a recorded statement.
The trial judge denied defendant's motion to suppress the statements he made on several grounds. Relevant to the State's duty to deliver the advisements required by Miranda, the judge found: "The detective in this case attempted to inform defendant of his Miranda rights, but the defendant refused to listen. The court notes that in such set of circumstances, the defendant has effectively waived his right to be informed. Accordingly, the defendant is estopped from asserting his rights under Miranda."
Additionally, crediting the officers' testimony, the judge found that Miranda did not apply because there was no interrogation and defendant volunteered the statements. He explained:
I've come to the conclusion that the detectives are telling the truth.... [T]he defendant wants to run the show. That the defendant is basically orchestrating what's going to happen.
He's effectively telling them what to do. And that despite their many attempts to advise defendant of his Miranda warning, he constantly interrupts them and will not let them do it. Purposely will not let them do it. Repeatedly they try to give him the Miranda warning and consistently he interrupts them. He prevents them from giving the Miranda warning and then says what he wants to say.
The most compelling example is when he has a number of detectives from a variety of towns sitting at the DA's office with an assistant prosecutor there and the defendant tries to run the show by telling everybody, well, this is off the record, and the AP says, no, it's not, it's not off the record, everything is on the record.... [A]nd then we have a round robin, ... the defendant would go down the line and as the detective[s] would introduce themselves [he would] tell what town they were from, the defendant would then go to proceed to tell them what he did in that town and describe the criminal events.
It wasn't pursuant to questioning. He wanted to orchestrate a deal ... where everything was combined. And he decided that he did not want his attorney called in....
The judge rejected defendant's testimony that he was transported to the meeting, could not refuse to attend and did not speak. He found:
The most telling example of that not being the truth is that all of these people took time from all of the various towns to meet with the defendant at the DA's office.... That didn't just happen. That was orchestrated. And it was orchestrated by the defendant, frankly. So what he says to the detective is admissible.

B
To admit a statement obtained during custodial interrogation, the prosecution must demonstrate that the defendant was informed in accordance with Miranda and knowingly, voluntarily, and intelligently waived his or her rights. Miranda v. Arizona, 384 U.S. 436, 479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694, 726 (1966); State v. O'Neill, 193 N.J. 148, 168, 936 A.2d 438 (2007). "`[T]he New Jersey common law privilege against self-incrimination affords greater protection to an individual than that accorded under the federal privilege.'" State v. A.G.D., 178 N.J. 56, 67, 835 A.2d 291 (2003) (quoting In re Grand Jury Proceedings of Guarino, 104 N.J. 218, 229, 516 A.2d 1063 (1986)). Thus, under the law of this *533 State, the prosecution "`must prove beyond a reasonable doubt that the suspect's waiver [of the privilege against self-incrimination] was knowing, intelligent, and voluntary in light of all the circumstances.'" Ibid. (quoting State v. Presha, 163 N.J. 304, 313, 748 A.2d 1108 (2000)).
In this case, the evidence the State introduced to meet its burden under the foregoing standards established a different ground for exclusion of the statements defendant made at the May 8 meeting. As defense counsel argued in the trial court and contends on appeal, the State's proofs and the trial judge's findings required exclusion of the statements pursuant to N.J.R.E. 410.[2] With respect to the statements defendant made during the May 8 meeting at the District Attorney's office, we fully agree.
Pursuant to N.J.R.E. 410, with exceptions not relevant here, "any statement made during plea negotiations ... is not admissible in any civil or criminal proceeding against the person who made the plea or statement or who was the subject of the plea negotiations." Thus, N.J.R.E. 410 supersedes State v. Boyle, 198 N.J.Super. 64, 69-73, 486 A.2d 852 (App.Div.1984), a case in which we held that statements volunteered during a plea negotiation could be admitted into evidence in a criminal proceeding. See 1991 Supreme Court Committee Comment to N.J.R.E. 410 (noting that change in the law) (reprinted in Biunno, Current N.J. Rules of Evidence, comment on N.J.R.E. 410 (2009)). The rationale for this evidence rule is that "for 'plea bargaining to work effectively and fairly, a defendant must be free to negotiate without fear that his statements will later be used against him.'" Boyle, supra, 198 N.J.Super. at 69, 486 A.2d 852 (quoting United States v. Herman, 544 F.2d 791, 796 (5th Cir.1977)).
The judge's factual findings compel us to conclude that N.J.R.E. 410 required exclusion of everything defendant said at the May 8 meeting. Accepting the State's proofs, he found: the presence of law enforcement officers at a meeting with defendant did not just happen but occurred because the meeting was orchestrated by defendant; defendant wanted to "run the show" and was "basically orchestrating what [was] going to happen"; he said "what he want[ed] to say"; and "[h]e wanted to orchestrate a deal ... where everything was combined." Those findings, which are well-supported by the officers' testimony, including the State's explanation for the presence of the assistant prosecutor, do not permit any conclusion other than that defendant believed he was attending the meeting he wanted to have  a meeting to negotiate a global plea agreement resolving multiple burglaries committed in various counties.
Without any evidence that defendant was informed that the officers and the assistant prosecutor attended the meeting to collect incriminating statements to be used against defendant at trial, the facts, as the judge found them to be, required exclusion of the statements pursuant to N.J.R.E. 410. In short, we conclude that the State cannot introduce evidence to convince the court that a suspect has volunteered statements and then avoid the legal implications that flow from the proofs presented. It was error to admit these statements after finding that the statements were made under circumstances in which *534 they cannot be admitted in conformity with N.J.R.E. 410.
To avoid confusion, we stress that we have not found a violation of N.J.R.E. 410 because the suspect hoped that cooperation would bring favorable treatment. This decision is based on factual findings of the trial judge that compel the conclusion that defendant thought he was volunteering his statements during a meeting he requested to negotiate a plea bargain.
Because N.J.R.E. 410 requires exclusion of the statements defendant made at the May 8 meeting, there is no need to consider the propriety of the court's ruling that a suspect who interrupts Miranda warnings is estopped from seeking relief on the ground that the State failed to deliver them.[3] It also makes it unnecessary for us to address the obvious conflict between the judge's finding that defendant was not interrogated at the May 8 meeting and the officers' testimony detailing the questions they asked. Our ruling on N.J.R.E. 410 also eliminates any reason to consider whether defendant was advised of all charges pending against him on May 8. Our silence on these issues should not be understood as an implied endorsement of the rulings or the adequacy of the State's evidence on these points.
We also stress that our reliance on N.J.R.E. 410 should not obscure the fact that the circumstances of the May 8 meeting raise a question about the validity of defendant's waiver of his right against self-incrimination. That question is whether defendant made statements at the May 8 meeting that he "would not have made had it not been for the misleading actions of the Government." United States v. Swint, 15 F.3d 286, 290 (3d Cir. 1994); see also State v. Adams, 127 N.J. 438, 442-43, 605 A.2d 1097 (1992) (discussing the efforts made to clarify that oral statements, like written statements, could be introduced at trial); State v. Pillar, 359 N.J.Super. 249, 268, 820 A.2d 1 (App.Div.) (concluding that the State was obligated to dispel confusion about whether defendant's statements were on or off the record), *535 certif. denied, 177 N.J. 572, 832 A.2d 322 (2003). "[P]olice officers conducting a custodial interrogation cannot withhold essential information necessary for the exercise of the privilege...." O'Neill, supra, 193 N.J. at 179, 936 A.2d 438. We do not address that issue because it is not necessary to our decision and defendant has not argued the point.
Because we cannot conclude that the judge's factual findings with respect to the May 8 meeting have any relevance to the meeting at Rikers Island, we turn to consider defendant's claim that Miranda required exclusion of the statement he made during the April meeting held at Rikers Island. It was during that meeting that defendant assured the officers that they had done their job and found the right person.
Miranda has no application to statements that are "volunteered." Miranda, supra, 384 U.S. at 478, 86 S.Ct. at 1630, 16 L.Ed.2d at 726. Interrogation triggering the State's obligation to deliver Miranda warnings requires "words or actions on the part of the police that they should have known were reasonably likely to elicit an incriminating response." Rhode Island v. Innis, 446 U.S. 291, 303, 100 S.Ct. 1682, 1691, 64 L.Ed.2d 297, 309 (1980); State v. Ward, 240 N.J.Super. 412, 417, 573 A.2d 505 (App. Div.1990) (quoting Innis); see State v. Stott, 171 N.J. 343, 365, 794 A.2d 120 (2002) (referencing the Innis standard).
With respect to the statement defendant made at Rikers Island, the judge's conclusion that it was volunteered and not a product of interrogation is "`supported by sufficient credible evidence in the record.'" State v. Gandhi, 201 N.J. 161, 200, 989 A.2d 256 (2010) (quoting State v. Elders, 192 N.J. 224, 243, 927 A.2d 1250 (2007)). There is no evidence in this record even suggesting that either of the officers said or did anything reasonably likely to evoke an incriminating response during that meeting. By the officers' account, which is the only account, the conversation was one-sided; defendant set forth what he knew about his potential exposure and expressed his desire to have the charges resolved by one prosecutor and without his lawyer. Thus, there is no reason to disturb the judge's decision to admit the statement assuring the officers' that they had done their job. Ibid.
Defendant's claimed violation of Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), warrants no more than brief comment. R. 2:11-3(e)(2). The judge did not credit his testimony, and the officers, whom the judge believed, testified that defendant did not invoke his right to counsel at any point prior to his refusal to give a recorded statement.
In summary, we have concluded that defendant's statement assuring the officers that they had done their job and found the person who committed these crimes was properly admitted. In contrast, we have determined that the statements defendant made at the May 8 meeting were admitted in error.
That leaves us to consider whether the admission of the statements defendant made at the May 8 meeting was harmless error. R. 2:10-2. While we have no doubt that the admissible evidence is adequate to permit a conviction, it is not sufficiently overwhelming to eliminate all reasonable doubt about whether the verdict would have been different if the statements were excluded. State v. Castagna, 187 N.J. 293, 312, 901 A.2d 363 (2006); see Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710-11 (1967). The statements at issue provided additional and persuasive evidence of guilt. The likely impact on jurors who heard the officers *536 repeat defendant's recitation of facts disclosing his familiarity with the Zahos home and the victim's response to her attacker is too apparent to require elaboration. Accordingly, we conclude that defendant's conviction must be reversed and the case must be remanded for a new trial.

IV
[At the court's direction, its discussion of the additional issues raised on appeal has been omitted from the published opinion.]
Reversed and remanded for further proceedings in conformity with this decision.
NOTES
[1] The State introduced other items seized from defendant's residence that did not tend to link defendant with the Zahos crimes but were relevant to his parole violation. Those items were a ticket from a pawn shop in Virginia indicating receipt of two rings from defendant and a Virginia driver's license issued to him. Both the license and pawn shop ticket were dated February 26, 2006, a date five days after Zahos was attacked in her home.
[2] Although this issue was raised and argued by defense counsel at the suppression hearing, the judge did not address it.
[3] There is some authority for the proposition that a suspect may waive Miranda warnings by interrupting their delivery. See State v. Perez, 182 Neb. 680, 157 N.W.2d 162, 164, cert. denied, 393 U.S. 886, 89 S.Ct. 200, 21 L.Ed.2d 163 (1968); State v. Walden, 336 N.W.2d 629, 632 (N.D.1983); State v. Thomas, 16 Wash.App. 1, 553 P.2d 1357, 1363 (1976); but cf. United States v. Patane, 542 U.S. 630, 635, 635 n. 1, 124 S.Ct. 2620, 2625, 2625 n. 1, 159 L.Ed.2d 667, 673, 673 n. 1 (2004) (noting the government's concession that a defendant's interruption does not relieve the government of its obligation to deliver Miranda warnings); Miranda, supra, 384 U.S. at 479, 86 S.Ct. at 1630, 16 L.Ed.2d at 726 (holding that "unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used"); id. at 468-69, 86 S.Ct. at 1625, 16 L.Ed.2d at 720-01 (explaining the importance of warnings in cases involving a suspect who is aware of the rights).

In other decisions referencing waiver and estoppel by interruption of warning, the courts have also found that there was no interrogation and warnings were not required. See State v. Grayhurst, 852 A.2d 491, 514 (R.I.2004); accord Myers v. State, 256 So.2d 400, 402 (Fla.Dist.Ct.App.1972); State v. Wilson, 26 Ohio App.2d 23, 268 N.E.2d 814, 817 (1971); State v. Ouimette, 110 R.I. 747, 298 A.2d 124, 140 (1972).
Some jurisdictions have found waiver when the suspect's refusal to listen includes a recitation of the information the state is required to provide. See Johnson v. Arkansas, 299 Ark. 223, 772 S.W.2d 322, 324 (1989); California v. Nitschmann, 35 Cal.App.4th 677, 41 Cal. Rptr.2d 325, 327-28 (1995).
Other courts have held that the warnings cannot be waived. See State v. Verdugo, 142 N.M. 267, 164 P.3d 966, 970-72 (Ct.App. 2007); State v. DeWeese, 213 W.Va. 339, 582 S.E.2d 786, 797 (2003); see generally 2 Wayne R. LaFave, et al., Criminal Procedure § 6.8(a) at 799 (3d ed. 2007) (discussing the issue of waiver by conduct).