NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2568-17T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JOHN G. HAGER, a/k/a
JOHN G. HAGER, JR.,
and JACK,

     Defendant-Appellant.

_____

**APPROVED FOR PUBLICATION**

**February 19, 2020**

**APPELLATE DIVISION**

     Submitted December 11, 2019 – Decided  February 19, 2020

     Before Judges Koblitz, Whipple and Gooden Brown.

     On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Indictment No. 14-07-0678.

     Joseph E. Krakora, Public Defender, attorney for appellant (Michael Timothy Denny, Assistant Deputy Public Defender, of counsel and on the briefs).

     Charles A. Fiore, Gloucester County Prosecutor, attorney for respondent (Staci L. Scheetz, Senior Assistant Prosecutor, on the brief).

    The opinion of the court was delivered by

GOODEN BROWN, J.A.D.

In this case, we consider whether the omission of one of the Miranda[1] warnings during custodial interrogation adequately conveys the substance of the warnings. Defendant was charged in a three-count indictment with third-degree terroristic threats, N.J.S.A. 2C:12-3(a); fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a)(2); and second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b). The charges stemmed from an altercation at defendant's home, as a result of which responding officers placed defendant under arrest. During the ensuing custodial interrogation, in which it is undisputed defendant was administered incomplete Miranda warnings, defendant disclosed the location of a BB gun in his home, leading to the issuance of a search warrant and the seizure of the gun.

Following a bifurcated jury trial in which defendant's statement was admitted, defendant was convicted of a lesser-included disorderly persons offense of resisting arrest, N.J.S.A. 2C:29-2(a)(1), and acquitted of terroristic threats. Prior to the second trial on the certain persons charge, defendant entered a negotiated guilty plea to an amended charge of third-degree unlawful possession of a BB gun, N.J.S.A. 2C:39-5(b)(2). He was sentenced to an aggregate five-year probationary term, conditioned upon serving 100 days in the county jail.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

A-2568-17T4

On appeal, defendant raises the following single point for our consideration:

> POINT I
>
> THE [MIRANDA] WARNING WAS FUNDAMENTALLY FLAWED BECAUSE IT DID NOT INFORM THE DEFENDANT THAT HE HAD A RIGHT TO HAVE COUNSEL PROVIDED FOR HIM IF HE COULD NOT AFFORD IT, VIOLATING HIS RIGHTS TO DUE PROCESS AND A FAIR TRIAL, AND REQUIRING SUPPRESSION OF HIS STATEMENT AND THE PHYSICAL EVIDENCE FOUND AS A RESULT.

We accept the trial judge's factual findings following the Miranda hearing, as they are supported by sufficient, credible evidence in the record. See State v. Gandhi, 201 N.J. 161, 200 (2010) (quoting State v. Elders, 192 N.J. 224, 243 (2007)). However, reviewing de novo the judge's legal conclusions that flow from those facts, see State v. Mann, 203 N.J. 328, 337 (2010), we conclude the statements defendant made during custodial interrogation should have been excluded at trial. Thus, we reverse defendant's convictions and remand for a new trial. Nevertheless, we are satisfied suppression of the physical evidence seized as a result of defendant's statements is not required.

Following the Miranda hearing, the judge issued a May 17, 2017 written decision denying defendant's motion to suppress his statements and the

evidence seized as a result. The judge summarized his factual findings as follows:

> On February 23, 2014, patrols from the Logan Township Police Department were dispatched to . . . Main Street in Bridgeport . . . regarding an altercation involving [an] alleged terroristic threat. Upon arrival, the patrol officers spoke with the caller, [D.W.] [D.W.] was [d]efendant's tenant and [d]efendant's apartment was located above [D.W.'s] residence. [D.W.] informed the officer that while she was out, [d]efendant threatened to shoot her son, [Z.W.], if the trashcans were moved again. [Z.W.] informed the officers that [d]efendant knocked on his bedroom window and said, "move them again and I'll shoot you mother fucker." [Z.W.] claimed that he moved the trashcans in order for his mother to be able to park her vehicle.
>
> Based on previous reports, the patrol officers were aware that [d]efendant had a BB gun. Speaking through a window, the officers told [d]efendant that he needed to come to the door and talk with them because he was being charged with terroristic threats. Defendant refused to come to the door and informed patrols he was threatening his brother, not [Z.W.] Defendant was then advised that he was under arrest several times and instructed to open up or the officers would have to kick down the front door. [Sgt.] Flatley kicked in the first level door, and gave more warnings at the top of the stairs. Defendant still refused to open the door, so the officers then kicked in the door to the second floor apartment. Defendant ran into the bedroom, but came out after a few verbal commands. Defendant was placed under arrest following a short struggle, removed from the residence, and brought down to the police vehicle.

A-2568-17T4

Based on his review of the arrest recorded on Flatley's police vehicle mobile video recorder (MVR), the judge found:

> Sgt. Flatley then began to read [d]efendant his rights pursuant to <u>Miranda</u>; however, [d]efendant continuously interrupted the officer. Following the <u>Miranda</u> warnings, [d]efendant voluntarily answered questions relating to various items that were located in his apartment, particularly the location of the BB gun. Defendant told the officers that he had a BB gun and a flare gun in a box located in the bedroom next to the kitchen. Additionally, [d]efendant acknowledged that although he possessed these items, he believed he was allowed to, despite being a convicted felon. Defendant was then transported to police headquarters.
>
> Once at headquarters, unbeknownst to [d]efendant, an officer immediately turned on the recording device, where [d]efendant was handcuffed in his seat. Sgt. Flatley advised [Ofc.] Hopkins that [d]efendant had been previously advised of his <u>Miranda</u> rights, and that he acknowledged and waived his right to remain silent and to have counsel present during questioning. The State has confirmed that no <u>Miranda</u> card exists. Ofc. Hopkins spoke with [d]efendant in the booking area to gain information for the generation of a search warrant. Ofc. Hopkins asked [d]efendant for a specific location of the firearms in the residence and [d]efendant again stated that the firearms were located in a brown box in the bedroom next to the kitchen. Defendant further stated that the key to the box was located on top of the refrigerator in the kitchen.
>
> The police subsequently sought a warrant to search [d]efendant's house. . . . [A] search warrant was issued, and . . . several items, including the BB gun and flare gun were found in the brown box.

Preliminarily, the judge determined that the statements made after defendant was arrested, removed from his apartment, and brought to the police vehicle, were the product of a custodial interrogation for which <u>Miranda</u> warnings were required as a precondition to admissibility. Thus, the judge correctly posited that "the issue [was] whether the substance of the <u>Miranda</u> rights" conveyed to defendant "adequately informed [him] of his constitutional rights."

Relevant to that inquiry, the judge acknowledged that

> when the officer was trying to administer the warnings, [d]efendant was very loud and argumentative, and continuously interrupted the officer. The officer stated to [d]efendant,
>
> > . . . [Y]ou have the right to remain silent . . . Anything you say can and will be used against you in a court of law . . . You have the right to speak to an attorney and have one present with you before you're questioned. Okay? Once you've answered questions, you have the right to stop answering questions[2] . . . You have the right to stop answering questions at any point in time.

---

[2] The judge pointed out that there was "a discrepancy" between the MVR transcript and the MVR audio, both of which the judge reviewed. According to the judge, the audio "clearly indicate[d] that Sgt. Flatley advised [d]efendant that once he started answering questions, he had the right to stop answering questions at any time."

> However, the officer was interrupted by
> [d]efendant before he could advise [d]efendant that
> . . . if he could not afford an attorney, one would be
> provided to him. Afterwards, [d]efendant continued to
> be very loud and argumentative, and the officer did
> not have the opportunity to complete the warnings.

Nonetheless, the judge concluded that "the warnings used adequately informed [d]efendant of his constitutional rights," and "any statements made [were] admissible." Moreover, the judge reasoned that "[e]ven if [d]efendant had not been properly advised of his <u>Miranda</u> rights," the statements made at the police station four hours later were "nevertheless admissible because they were part of the routine booking procedure and [d]efendant volunteered the information without being asked."

Next, the judge considered the totality of the circumstances and concluded "[d]efendant knowingly, intelligently, and voluntarily waived his rights." The judge explained:

> Defendant was [fifty-nine] at the time of the arrest.
> While [d]efendant has not had an indictable conviction
> since his 1993 convictions for arson and contempt, the
> police were familiar with this [d]efendant based on
> previous reports, as they were aware he might have a
> BB gun in his apartment. Defendant made statements
> immediately after being administered the <u>Miranda</u>
> warnings, and again four hours later. Neither of the
> lapses of time are viewed as significant. Although
> there is a four-hour gap between [d]efendant being
> advised of his <u>Miranda</u> rights and further statements
> given to Ofc. Hopkins, there is no requirement for the
> warnings to be repeated, as there was no intervening

event between the arrest and the police department. The statements made by [d]efendant were given in one continuing event through the evening and there was nothing which would dilute the efficacy of the original warning.

Lastly, the circumstances surrounding the statements do not involve physical abuse . . . . The videos reflect that the statements made by [d]efendant were a deliberate choice rather than one made from coercion, deception, or intimidation, and were made with the full awareness of what he was saying. . . . There is no indication that [d]efendant could not understand English, but rather, [d]efendant was able to understand questions and talk with the officers. Further, there is no indication that [d]efendant's diabetes had any effect whatsoever on [d]efendant's cognition or his ability to provide a valid statement or waiver. Finally, the fact that [d]efendant chose to speak after being advised of his <u>Miranda</u> rights is highly probative in determining that the statements given by the defendant were knowing, intelligent, and voluntary.

Accordingly, the judge concluded "[d]efendant validly waived his <u>Miranda</u> rights, and any statements made [were] admissible."

On appeal, defendant argues the judge's conclusion that the <u>Miranda</u> warnings used adequately informed him of his constitutional rights "was error as was the conclusion that [defendant] knowingly and voluntarily waived his rights." Defendant asserts "his statement, and the BB gun found as a result of this unwarned interrogation must be suppressed."

"One of the most fundamental rights protected by both the Federal Constitution and state law is the right against self-incrimination."  State v. O'Neill, 193 N.J. 148, 167 (2007).  See U.S. Const. amend. V ("No person . . . shall be compelled in any criminal case to be a witness against himself . . . ."); N.J.S.A. 2A:84A-19 ("[E]very natural person has a right to refuse to disclose in an action or to a police officer or other official any matter that will incriminate him . . . ."); N.J.R.E. 503 (same).  In Miranda, "[t]he Court resolved to put in place safeguards to protect the privilege and counteract the 'inherently compelling pressures which work to undermine the individual's will to resist and to compel [an individual subject to custodial interrogation] to speak where he would not otherwise do so freely.'"  O'Neill, 193 N.J. at 167 (second alteration in original) (quoting Miranda, 384 U.S. at 467).

> To ensure that an individual would have a meaningful opportunity to exercise the privilege, the Court decreed that an individual who is "subjected to police interrogation while in custody at the station or otherwise deprived of his freedom of action in any significant way," "must be adequately and effectively apprised of his rights."  To that end, the Court mandated that "unless other fully effective means are adopted to notify the person of his right of silence," the following warnings must be given to a person in police custody before interrogation begins:
>
> > He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has

the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation.

The Court held that after the individual is advised of his rights and given an opportunity to exercise them, he then "may knowingly and intelligently waive [them] and agree to answer questions or make a statement." Unless the prosecution demonstrates that the individual was informed of his rights and knowingly, voluntarily, and intelligently waived them, "no evidence obtained as a result of interrogation can be used against him."

[Id. at 168 (alteration in original) (quoting Miranda, 384 U.S. at 467-77, 479) (citations omitted).]

Our Supreme Court has consistently "stressed, as a matter of state law," that principles of Miranda inform our privilege against self-incrimination. State v. Reed, 133 N.J. 237, 258-59 (1993). See, e.g., State v. Nyhammer, 197 N.J. 383, 400-01 (2009). While the Court "does not require that any specific language be used to inform an accused of his rights," "[w]ords which convey the substance of the warning along with the required information" are required. State v. Melvin, 65 N.J. 1, 14 (1974).

In United States v. Patane, 542 U.S. 630 (2004), the United States Supreme Court acknowledged that statements generated from questioning conducted following partial Miranda warnings are inadmissible at trial,

10

notwithstanding the fact that the defendant interrupted the completion of the warnings. Id. at 635 n.1. Because the violation occurs "only upon the admission of unwarned statements into evidence at trial," "'[t]he exclusion of unwarned statements . . . is a complete and sufficient remedy' for any perceived Miranda violation." Id. at 641-42 (alterations in original) (quoting Chavez v. Martinez, 538 U.S. 760, 790 (2003)).

Here, it is undisputed that defendant was never informed of all the Miranda rights, was never advised of his right to appointed counsel if he could not afford to hire an attorney, and never acknowledged waiving his rights orally or in writing. Nonetheless, the judge determined the substance of the Miranda warnings was conveyed, and defendant knowingly, intelligently, and voluntarily waived his rights. We disagree that the omission of a critical right can be construed as "convey[ing] the substance of the [Miranda] warning[s] along with the required information." Melvin, 65 N.J. at 14 (quoting United States v. Vanterpool, 394 F.2d 697, 698-99 (2d Cir. 1968)). While neither a "talismanic incantation," "a verbatim recital of the words of the Miranda opinion" nor a "precise formulation of the warnings" has ever been "required to satisfy [Miranda's] strictures," California v. Prysock, 453 U.S. 355, 359-60 (1981), omission of a right has never been countenanced in our courts. Thus,

we conclude that in the circumstances of this case, the requirements of Miranda were not met and both statements should have been excluded.

Likewise, we disagree with the judge's alternate determination that the statement made at the police station was volunteered and thereby admissible. While "Miranda has no application to statements that are 'volunteered,'" State v. Brabham, 413 N.J. Super. 196, 210 (App. Div. 2010) (quoting Miranda, 384 U.S. at 478), "[i]nterrogation triggering the State's obligation to deliver Miranda warnings requires 'words or actions on the part of the police that they should have known were reasonably likely to elicit an incriminating response.'" Id. at 210-11 (quoting Rhode Island v. Innis, 446 U.S. 291, 303 (1980)). Here, the undisputed evidence shows defendant was asked pointed questions reasonably likely to evoke an incriminating response, namely, the location of the BB gun.

The judge attributed the officer's omission of the critical warning to defendant's continuous interruptions, essentially inferring some type of waiver on defendant's part. "There is some authority for the proposition that a suspect may waive Miranda warnings by interrupting their delivery." Id. at 209 n.3. See State v. Perez, 157 N.W.2d 162, 164 (Neb. 1968); State v. Walden, 336 N.W.2d 629, 632 (N.D. 1983); State v. Thomas, 553 P.2d 1357, 1363 (Wash. Ct. App. 1976); Johnson v. State, 772 S.W.2d 322, 324 (Ark. 1989); People v.

Nitschmann, 41 Cal. Rptr. 2d 325, 327-28 (Ct. App. 1995). "Other courts have held that the warnings cannot be waived." Brabham, 413 N.J. Super. at 209 n.3. See State v. Verdugo, 164 P.3d 966, 970-72 (N.M. Ct. App. 2007); State v. DeWeese, 582 S.E.2d 786, 797 (W. Va. 2003); see generally 2 Wayne R. LaFave et al., Crim. Proc. § 6.8(a) at 799 (3d ed. 2007) (discussing the issue of waiver by conduct).

We believe the better approach is the one endorsed in Patane, 542 U.S. at 635, 635 n.1 (noting the government's concession that a defendant's interruption does not relieve the government of its obligation to deliver Miranda warnings), and, of course, Miranda, 384 U.S. at 479 (holding that "unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used"). Our conclusion "leaves us to consider whether the admission of the statements defendant made . . . was harmless error," Brabham, 413 N.J. Super. at 211, requiring reversal if the error "is of such a nature as to have been clearly capable of producing an unjust result." R. 2:10-2. To be sure, "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." State v. Castagna, 187 N.J. 293, 312 (2006) (quoting Chapman v. California, 386 U.S. 18, 24 (1967)).

13

At the jury trial, evidence of defendant's guilt was not overwhelming as evidenced by the fact that he was acquitted of the most serious charge and convicted of a lesser included disorderly persons offense. "While we have no doubt that the admissible evidence is adequate to permit a conviction, it is not sufficiently overwhelming to eliminate all reasonable doubt about whether the verdict would have been different if the statements were excluded," particularly since "[t]he statements at issue provided additional and persuasive evidence of guilt." Brabham, 413 N.J. Super. at 211-12. Accordingly, we conclude that defendant's conviction for the disorderly persons resisting arrest offense must be reversed and the case remanded for a new trial.

As to defendant's conviction for unlawful possession of the BB gun, we accept defendant's representation that the judge's incorrect Miranda ruling led directly to him later entering a negotiated guilty plea. Accordingly, we vacate the guilty plea, and remand for further proceedings. However, we reject defendant's contention that suppression of the BB gun is mandated as a remedy for the Miranda violation. As the Court held in Patane,

> the Miranda rule is a prophylactic employed to protect against violations of the Self-Incrimination Clause. The Self-Incrimination Clause, however, is not implicated by the admission into evidence of the physical fruit of a voluntary statement. Accordingly, there is no justification for extending the Miranda rule to this context. And just as the Self-Incrimination Clause primarily focuses on the criminal trial, so too

does the <u>Miranda</u> rule.  The <u>Miranda</u> rule is not a code of police conduct, and police do not violate the Constitution (or even the <u>Miranda</u> rule, for that matter) by mere failures to warn.  For this reason, the exclusionary rule . . . does not apply.

[<u>Id.</u> at 636-37.]

Reversed and remanded for further proceedings in conformity with this decision.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION