679 A.2d 664

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. JALEEL ABDUL MALIK–ISMAIL, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted February 28, 1996—Decided July 16, 1996.

Before Judges LANDAU, KLEINER and HUMPHREYS.

*Edward M. Neafsey,* Acting Union County Prosecutor, attorney for appellant (*Steven J. Kaflowitz,* Assistant Prosecutor, of counsel and on the brief).

No brief was filed on behalf of respondent.

The opinion of the court was delivered by

HUMPHREYS, J.A.D.

Defendant and co-defendant Walker were charged with first degree murder and related offenses. Pursuant to a plea agreement, the defendant pled guilty to a conspiracy to commit murder. The defendant gave a statement to the prosecutor and agreed to testify truthfully at the co-defendant's trial. The prosecutor later learned that the statement of the defendant was false and the defendant intended to lie at the co-defendant's trial. With the permission of the court, the State withdrew from the plea agreement. Thereafter, the judge suppressed post-plea statements given by the defendant to the prosecutor. The judge held that the statements were inadmissible because defendant had not been advised of his constitutional right to remain silent. *See Miranda v. Arizona,* 384 *U.S.* 436, 86 *S.Ct.* 1602, 16 *L.Ed.*2d 694 (1966). The judge also suppressed statements of a witness whose existence was learned as a result of the defendant's post plea statements. The judge reasoned that the witness's statement should be suppressed because it was the "poisonous fruit" of the defendant's "non-mirandized statements."

We granted the State's motion for leave to appeal. We reverse as to some of the statements suppressed.

I

The defendant pled guilty on June 14, 1994 to a conspiracy to commit a murder. The State agreed to recommend a sentence of seven years with no parole ineligibility. The first degree murder charge against the defendant would be dismissed. The defendant agreed to testify truthfully at the trial of the co-defendant. The defendant was also required to speak to the trial prosecutor to prepare for the defendant's testimony as a witness at the co-defendant's trial. The State also asserts that, although not stated in the plea form, the State agreed to advise the Parole Board at

the time the defendant became eligible for parole as to the nature and extent of the defendant's cooperation in the trial of the co-defendant.

When the defendant entered his plea of guilty, he was placed under oath and questioned as to the factual basis for his plea. He said that he and the co-defendant agreed that the co-defendant would kill the victim. The defendant and co-defendant went to the house where the victim was staying. The defendant's role was to induce the victim to come onto the front porch. The victim did so and the co-defendant shot him in the head. The defendant said he understood that his responsibility in the co-defendant's case was to testify truthfully.

After the plea of guilty was entered, but on the same day, June 14th, the defendant gave a statement at the prosecutor's office in the presence of his attorney in which the defendant admitted planning and conspiring with the co-defendant to murder the victim. The defendant denied having a gun at the time of the murder.

The defendant was interviewed by the prosecutor's office on January 11 and 13, 1995 in preparation for his testimony at the trial of the co-defendant. The defendant's attorney waived his appearance at these interviews. No *Miranda* warnings were given during the interviews. At the interview on January 11, 1995, the defendant said that he had obtained a .38 caliber revolver *after* the murder for his own protection and that he had given the gun to a friend, Lamar Payne, the night before he turned himself in to the police.

On January 13, 1995, the investigator interviewed the defendant about the whereabouts of Lamar Payne. Later that day the investigator interviewed Lamar Payne's brother, Eric Payne. The investigator was told by Eric Payne that the defendant had come to him the night of the murder in a nervous state and asked him to dispose of a .38 caliber revolver; ten minutes later the defendant's brother came and took the gun back.

Ballistic test results were obtained by the prosecutor's office on January 13, 1995. The tests established that the victim was shot with a .38 caliber gun, probably a revolver.

On January 15, 1995, the defendant was interviewed by an assistant prosecutor and an investigator. The defendant was asked if he had a gun with him at the time of the murder. He admitted that he did have a .38 caliber revolver. He also admitted that at the co-defendant's trial, he would have testified falsely that he was unarmed at the time of the murder.

The State then moved to withdraw from the plea agreement on the ground that the defendant had breached his obligation to provide truthful testimony at the trial. The court granted the motion and ordered separate trials of the defendant and the co-defendant. The judge said in his opinion on the motion that "[t]he prosecutor in pursuit of truth and as relates to the issues before this court at this time is not guilty of any impropriety in this matter."

Thereafter the judge suppressed the defendant's "plea and post-plea statements of June 14, 1994, January 11, 13 and 15, 1995. . . ." The judge also suppressed "[a]ny statement of Eric Payne given after January 11, 1995 ... as the fruit of defendant's non-Mirandized statements of January 11 and 13, 1995 concerning the gun he said he obtained after the murder. . . ." The judge said in his oral opinion that although the State did not get its end of the bargain, neither had the defendant. Consequently, the judge said, the defendant has to be placed "back to where he was prior to entering into the agreement." The judge said he agreed that a cooperating witness need not be "mirandized." However, when the defendant on January 11, 1995 admitted he had a gun, the State had new information. The judge said possession of a handgun is a crime and therefore "[a]ny questioning by the [S]tate at that point, ... should have been preceded by *Miranda*."

## II

We gather from the transcript of the argument below on the suppression motion that the State has conceded that the

January 15th statement may not be used in its main case. *Cf. State v. Miller,* 67 *N.J.* 229, 233, 337 *A.*2d 36 (1975) (statement taken without complying with *Miranda* rule is inadmissible in State's main case but may be used to impeach defendant's credibility as a witness if defendant testifies).

■ The statement of June 14th may also not be used in the State's main case. The statement was made on the same day the defendant entered his plea of guilty. *N.J.R.E.* 410 provides for the inadmissibility of "any statement made during plea negotiations when either no guilty plea resulted or a guilty plea was later withdrawn." In *State v. Boyle,* 198 *N.J.Super.* 64, 486 *A.*2d 852 (App.Div.1984), a statement taken under circumstances similar to the present case was held admissible. However, the Supreme Court Committee in its 1991 comment to *N.J.R.E.* 410 said that the rule "effectively supersedes" the holding in *State v. Boyle.*

After a careful review of the record, we are satisfied that the statement of June 14th should fairly be considered as part of the plea bargaining process and therefore comes within the bar of *N.J.R.E.* 410; *see also State v. Sanchez,* 129 *N.J.* 261, 277, 609 *A.*2d 400 (1992). Consequently, neither the June 14th nor the January 15th statement may be used in the State's main case.

### III

■ In *Miranda v. Arizona, supra,* 384 *U.S.* at 444, 86 *S.Ct.* at 1612, 16 *L.Ed.*2d at 706–707, the United States Supreme Court held that the prohibition in the Fifth Amendment of the United States Constitution against compelled self-incrimination requires that custodial interrogation be preceded by advising the suspect that he has the right to remain silent and the right to the presence of an attorney. After being so advised, the suspect may waive those rights and respond to questioning. *North Carolina v. Butler,* 441 *U.S.* 369, 99 *S.Ct.* 1755, 60 *L.Ed.*2d 286 (1979). A statement obtained from a suspect in violation of *Miranda* rights must be suppressed. *Miranda, supra,* 384 *U.S.* at 444, 86 *S.Ct.* at

1612, 16 *L.Ed.*2d at 706–707; *State v. Yough,* 49 *N.J.* 587, 595, 231 *A.*2d 598 (1967).

■ The judge here was of the opinion that defendant's admission that he possessed a handgun should have been followed by *Miranda* warnings because this was an admission of a crime. Defendant, however, is not being prosecuted for possession of a handgun, nor is the State attempting to prosecute him for some unrelated crime which they learned about during the course of the post plea interviews. Further, the *Miranda* rule was prompted by concerns about unrepresented defendants being subject to coercion by the police. See generally *Miranda v. Arizona, supra,* 384 *U.S.* 436, 86 *S.Ct.* 1602, 16 *L.Ed.*2d 694. Here, the defendant was represented by counsel who had waived his presence at the January 11th and 13th interviews.

The apparent absence of any request by the defendant for his counsel is an important factor. In *State v. Kennedy,* 97 *N.J.* 278, 288, 478 *A.*2d 723 (1984), the Court said:

> The facts before us, however, do not even remotely suggest a breach of this mandate [*Miranda*]. Once the fateful interrogation had resumed, there was not the slightest indication that defendant wished the questioning to terminate or that he wished to continue the interrogation only in the presence of counsel. Furthermore, there was no request, even equivocally made, that interrogation cease or continue only in counsel's presence. The earlier precatory admonition of the attorney—that defendant should cease giving information if and when he began to incriminate himself—cannot be equated with a request that the interrogation cease automatically at some future point.

The record here likewise does not suggest that the defendant ever asked for his counsel during the interviews or asked to have the questioning stop. Thus, the mandate of *Miranda* was not breached.

Put succinctly, the defendant agreed to cooperate with law enforcement. The defendant described in open court and under oath his participation in a murder conspiracy. He later gave a confirming statement to the prosecutor's office. The State properly interviewed the defendant with respect to that statement in order to present his testimony at trial. The prosecutor, as found

by the judge acted with propriety and in pursuit of the truth. Applying *Miranda* in such a setting is not consonant with the purpose and concerns that prompted the *Miranda* rule.

If the prosecutor had used the interview to question the defendant about some other unrelated crime, then perhaps fundamental fairness, *see State v. Abbati,* 99 *N.J.* 418, 493 *A.*2d 513 (1985), or *Miranda* might have barred the use of such statements in a prosecution of the defendant for that unrelated crime. That is not the case here. *See also United States v. Grant,* 622 *F.*2d 308, 315–316 (8th Cir.1980) (defendant's post-indictment statements not made in connection with the negotiations for the plea bargain were admissible); *United States v. Davis,* 617 *F.*2d 677, 686 (D.C.Cir. 1979), *cert. denied,* 445 *U.S.* 967, 100 *S.Ct.* 1659, 64 *L.Ed.*2d 244 (1980) (statements made by defendant before grand jury pursuant to a plea agreement were admissible despite defendant's later withdrawal from plea bargain); *United States v. Owen,* 492 *F.*2d 1100, 1108–1109 (5th Cir.1974), *cert. denied,* 419 *U.S.* 965, 95 *S.Ct.* 227, 42 *L.Ed.*2d 180 (1974) (defendant not entitled to suppress evidence obtained pursuant to his plea bargain despite government's temporary repudiation of that agreement).

We also note that Federal Evidence Rule 410, which is the source rule of *N.J.R.E.* 410, originally had proposed language which would cover this situation; namely, precluding statements made as a *"consequence* of such pleas or plea discussions." *See Preliminary Draft of Proposed Amendments to the Federal Rules of Evidence,* 77 *F.R.D.* 507, 610–612 (1978) (emphasis added); *see also Biunno, Current N.J. Rules of Evidence,* 1991 Supreme Court Committee comment to *N.J.R.E.* 410 (1995) (noting that *N.J.R.E.* 410 "generally follows Fed.R.Evid. 410"). This proposed language was not placed in the federal or State rule.

In sum, the defendant knew he had to tell the truth. He agreed to tell the truth. He was represented by counsel. The presence of his counsel at the interviews was waived. He lied at the interviews and would have lied at trial. In this context, *Miranda* principles should not be applied. The statements of January 11th

and January 13th are not barred by *Miranda*. The "tree" is not "poisonous" and therefore the Eric Payne statement is also not barred.

Truth has a high place in the administration of criminal justice. Chief Justice Weintraub said in *State v. Bisaccia,* 58 *N.J.* 586, 589, 279 *A.*2d 675 (1971): "Truth and justice are inseparable." Here if the defendant was harmed, it was due to his breach of his promise to tell the truth. As Justice Weintraub stated in *State v. McKnight,* 52 *N.J.* 35, 52–53, 243 *A.*2d 240 (1968):

> The Constitution is not at all offended when a guilty man stubs his toe. On the contrary, it is decent to hope that he will.
>
> . . . .
>
> Thus, the Fifth Amendment does not say that a man shall not be permitted to incriminate himself, or that he shall not be persuaded to do so. It says no more than that a man shall not be 'compelled' to give evidence against himself.
>
> . . . .
>
> It is consonant with good morals, and the Constitution, to exploit a criminal's ignorance or stupidity in the detectional process. This must be so if Government is to succeed in its primary mission to protect the first right of the individual to live free from criminal attack.

This case presents the "classic case of the criminal defendant who 'stubbed his toe.'" *See State v. Kennedy, supra,* 97 *N.J.* at 289, 478 *A.*2d 723 (when a defendant has full access to counsel, the burden is not on the prosecutor to prevent the defendant from stubbing his toe, citing *State v. McKnight, supra*). To protect the defendant from the consequences of his own wrongdoing in his dealings with the prosecutor is not required by constitutional law nor does it accord with any of the purposes of the criminal justice system.

Reversed and remanded for further proceedings consistent with this opinion.