NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0591-13T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

EBONEE R. WILLIAMS,
a/k/a EBONY WILLIAMS,
a/k/a FELTON N. WILLIAMS,
a/k/a ABONEE WILLIAMS,
a/k/a EBONEE ROSE WILLIAMS,
a/k/a EEBONY WILLIAMS,

    Defendant-Appellant.

_____

| |
|---|
| **APPROVED FOR PUBLICATION** |
| **April 6, 2016** |
| **APPELLATE DIVISION** |

Submitted October 20, 2015 — Decided April 6, 2016

Before Judges Reisner, Leone and Whipple.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 11-08-1194.

Joseph E. Krakora, Public Defender, attorney for appellant (Kevin G. Byrnes, Designated Counsel, on the brief).

Andrew C. Carey, Middlesex County Prosecutor, attorney for respondent (Miriam Acevedo, Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

LEONE, J.A.D.

Defendant Ebonee R. Williams appeals from her conviction for drug offenses. Her principal challenge is to the ruling that her formal statement during plea negotiations could be used to impeach her if she testified. We hold that N.J.R.E. 410 generally prohibits the use of any statement made during plea negotiations to impeach the person making the statement, but that a defendant can waive that protection under appropriate circumstances. We affirm, subject to a remand for a hearing to determine if defendant waived that protection by agreeing her statement could be used against her at trial. We reject her other claims.

## I.

On May 13, 2011, New Brunswick Police Department officers executed a search warrant at an apartment on Livingston Avenue. In the apartment, the officers found defendant. They located mail addressed to both defendant and co-defendant Raymond Davila bearing the apartment's address. In the kitchen stove, the officers found three "bricks" of heroin, each containing 150 bags. In a bedroom containing women's clothing and shoes, the officers found: seven "decks" of heroin on a television stand; two "bundles" containing twenty bags of heroin on top of the dresser; and one clear bag of about twelve grams of cocaine in a dresser drawer. Also in the bedroom, the officers found

defendant's purse, which contained her identification, empty packets of heroin, and other drug paraphernalia. The officers also discovered a loaded shotgun under a mattress and a loaded handgun in the bedroom.

Defendant and Davila were charged with possession of the items found in the Livingston apartment. After a six-day trial, defendant and Davila were both convicted of conspiracy under N.J.S.A. 2C:5-2 to possess a controlled dangerous substance (CDS) with intent to distribute in violation of N.J.S.A. 2C:35-5(a)(1), (b)(3); possession of heroin, N.J.S.A. 2C:35-10(a)(1); and possession of cocaine, N.J.S.A. 2C:35-10(a)(1). Defendant was also convicted of possession of heroin with intent to distribute, N.J.S.A. 2C:35-5(a)(1), (b)(3); and possession of heroin with intent to distribute within 1000 feet of a school, N.J.S.A. 2C:35-7.[1] For these third-degree offenses, the trial court sentenced defendant to a total of three years in prison with one-and-one-half years of parole ineligibility.

Defendant appeals from her judgment of conviction dated June 11, 2013, raising the following arguments:

---

[1] Davila was acquitted of those crimes. Both defendant and Davila were acquitted of possession of cocaine with intent to distribute; possession of cocaine with intent to distribute within 1000 feet of a school; possession of firearms while in the course of committing a drug distribution offense; unlawful possession of a handgun; and possession of a sawed-off shotgun.

POINT I - THE TRIAL COURT ERRONEOUSLY RULED THAT THE DEFENDANT'S STATEMENT — MADE AS PART OF A PLEA AGREEMENT THAT WAS WITHDRAWN BY THE STATE — WAS ADMISSIBLE TO IMPEACH HER CREDIBILITY.

POINT II - THE DEFENDANT'S MOTION TO DISMISS THE INDICTMENT SHOULD HAVE BEEN GRANTED.

    A. THE DEFENDANT'S PRETRIAL MOTION TO DISMISS THE INDICTMENT SHOULD HAVE BEEN GRANTED.

    B. THE MOTION FOR A JUDGMENT OF ACQUITTAL SHOULD HAVE BEEN GRANTED.

POINT III - THE TRIAL COURT FAILED TO INSTRUCT THE JURORS ON ALL THE ESSENTIAL ELEMENTS OF THE OFFENSE OF POSSESSION OF CDS WITH THE INTENT TO DISTRIBUTE.

POINT IV - THE DISCLOSURE OF THE IDENTITY OF THE CONFIDENTIAL INFORMANT WAS ESSENTIAL FOR A FAIR DETERMINATION OF THE ISSUES.

POINT V - THE STATE FAILED TO ESTABLISH THE CHAIN OF CUSTODY OF THE EVIDENCE.

POINT VI - THE DEFENDANT'S RIGHT TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES AS GUARANTEED BY THE ART. I, PAR. 7 OF THE NEW JERSEY CONSTITUTION WAS VIOLATED BY THE ISSUANCE OF A SEARCH WARRANT WITHOUT PROBABLE CAUSE.

II.

The first issue concerns whether defendant's formal statement to the Middlesex County Prosecutor's Office (MCPO) could be used to impeach her if she took the stand at trial. We must hew to our standard of review. "'[C]onsiderable latitude is afforded a trial court in determining whether to admit

4

evidence, and that determination will be reversed only if it constitutes an abuse of discretion.'" State v. Kuropchak, 221 N.J. 368, 385 (2015) (citation omitted). "But evidentiary rulings that undermine confidence in the validity of the conviction or misapply the law are subject to reversal." State v. Weaver, 219 N.J. 131, 149 (2014).

Defendant applied pre-indictment for admission to Drug Court. She was tentatively accepted on the condition that she give a truthful, formal statement about the involvement of her co-defendants Davila, Justin Jenkins, and Llamar Jenkins.[2] Defendant voluntarily appeared with her attorney for a videotaped interview. Defendant signed a form advising her of her Miranda rights.[3] The MCPO investigator also advised defendant orally of her Miranda rights, which defendant said she understood. In particular, defendant said she understood that "if you decide to make any statement, you must understand that it may later be used against you in the event of a trial."

---

[2] Because they share a last name, we will refer to Justin and Llamar by their first names. The indictment charged Justin and Llamar with the same crimes as defendant and Davila. Llamar was also charged with resisting arrest and obstructing justice during the search. They separately pled guilty to conspiracy to distribute CDS.

[3] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

During the interview, the investigator and defendant's counsel both questioned defendant. Defendant stated as follows. She resided in the Livingston Avenue apartment with Davila, the father of her son. Her nephew Llamar visited the apartment, and her nephew Justin stayed in the apartment most of the time. She and Davila were staying in the living room, and Justin was the only person living in the bedroom prior to the search. It was Justin who had access to the bedroom, kept his possessions in the bedroom, and used the dresser. The guns belonged to Justin, and the drugs belonged to Justin, Llamar, or Davila, all of whom were selling drugs.

In the interview, defendant initially said she was unaware of any drugs in the apartment or drug sales from the apartment. Later in the interview, she stated that, as a heroin addict, she knew there was heroin in the apartment for her use, which she got from Davila. She also said that Justin and Llamar were involved in the distribution of drugs from the apartment, and that she knew Justin had drugs in the apartment, but that she was just a "user" and had no involvement in the drug distribution.

The trial prosecutor determined that defendant's formal statement did not sufficiently implicate her co-defendants, so the State's "drug court plea offer was withdrawn." Later, the

6

prosecutor gave notice that if defendant took the witness stand, he would move to use "her attempted guilty plea against her for impeachment purposes." The trial court ruled the State could not use the formal statement affirmatively in its case-in-chief, but could use it for impeachment if defendant took the stand and testified contrary to her formal statement.

Defendant argues this ruling conflicted with N.J.R.E. 410. N.J.R.E. 410 provides:

> Except as otherwise provided in this rule, evidence of a plea of guilty which was later withdrawn, of any statement made in the course of that plea proceeding, and of any statement made during plea negotiations when either no guilty plea resulted or a guilty plea was later withdrawn, is not admissible in any civil or criminal proceeding against the person who made the plea or statement or who was the subject of the plea negotiations. However, such a statement is admissible (1) in any proceeding in which another statement made in the course of the same plea or plea discussions has been introduced and the statement should in fairness be considered contemporaneously with it, or (2) in a criminal proceeding for perjury, false statement, or other similar offense, if the statement was made by the defendant under oath, on the record, and in the presence of counsel.

> [N.J.R.E. 410 (emphasis added).]

On its face, N.J.R.E. 410 precludes the admission of evidence of a statement made during plea negotiations, absent exceptions not applicable here. See State v. Williams, 184 N.J.

432, 449 (2005) (noting that "most statements made during criminal plea negotiations" under N.J.R.E. 410 "are generally inadmissible in subsequent proceedings").

The drafters of N.J.R.E. 410 stated that it "generally follows Fed. R. Evid. 410" (eff. 1980) [hereinafter the Federal Rule]. Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, 1991 Supreme Court Committee Comment on N.J.R.E. 410 (2015) [hereinafter Committee Comment]. The pertinent language in N.J.R.E. 410 is essentially the same as in the Federal Rule.[4] By following the Federal Rule, the drafters "expand[ed] the exclusion to include not only an accused's offer to plead guilty but also any statements made during plea negotiations," and "effectively supersede[d]" our holding in State v. Boyle, 198

---

[4] In 1991, the Federal Rule provided, in pertinent part:

> Except as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions: . . . (4) any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.
>
> [Fed. R. Evid. 410 (eff. 1980) (emphasis added).]

The Federal Rule still provides that "evidence of the following is not admissible[:] . . . (4) a statement made during plea discussions[.]" Fed. R. Evid. 410 (eff. 2011).

N.J. Super. 64 (App. Div. 1984). Committee Comment, supra; accord State v. Brabham, 413 N.J. Super. 196, 207-08 (App. Div.), certif. denied, 203 N.J. 440 (2010); State v. Malik-Ismail, 292 N.J. Super. 590, 595 (App. Div. 1996). In Boyle, we refused to follow the Federal Rule and instead held that the former New Jersey rule did "not prohibit introduction of the accused's voluntary statements made during the plea negotiation process." Boyle, supra, 198 N.J. Super. at 68-73 (interpreting Evid. R. 52(2)).

N.J.R.E. 410 adopted the Federal Rule's rationale that "for 'plea bargaining to work effectively and fairly, a defendant must be free to negotiate without fear that his statements will later be used against him.'" Brabham, supra, 413 N.J. Super. at 208 (quoting Boyle, supra, 198 N.J. Super. at 69 (quoting United States v. Herman, 544 F.2d 791, 796 (5th Cir. 1977))). We have applied N.J.R.E. 410 to bar admission "in the State's main case" of statements made by defendants during plea negotiations. Malik-Ismail, supra, 292 N.J. Super. at 595; accord Brabham, supra, 413 N.J. Super. at 200, 209-10. No New Jersey case has resolved whether such statements can be used to impeach a defendant's trial testimony. Cf. State v. Mustaro, 411 N.J. Super. 91, 98 n.3 (App. Div. 2009).

In deciding that issue, we consider case law under "the source rule of N.J.R.E. 410," namely the Federal Rule. Malik-Ismail, supra, 292 N.J. Super. at 597. The Courts of Appeals had long ruled that "[t]he legislative history of these Rules is quite clear that plea negotiation statements are not admissible to impeach a defendant." United States v. Mezzanatto, 998 F.2d 1452, 1454 (9th Cir. 1993), rev'd on other grounds, 513 U.S. 196, 115 S. Ct. 797, 130 L. Ed. 2d 697 (1995); accord, e.g., United States v. Acosta-Ballardo, 8 F.3d 1532, 1535 (10th Cir. 1993); United States v. Lawson, 683 F.2d 688, 692 (2d Cir. 1982). The United States Supreme Court, addressing both the Federal Rule and Fed. R. Crim. P. 11(e)(6) in Mezzanatto, "certainly agree[d] that the Rules give a defendant the right not to be impeached by statements made during plea discussions." United States v. Mezzanatto, 513 U.S. 196, 200 n.2, 115 S. Ct. 797, 801 n.2, 130 L. Ed. 2d 697, 703 n.2 (1995).

Other States have followed the federal courts and "have declined to fashion a general impeachment exception" to their versions of the Federal Rule. See State v. Amidon, 967 A.2d 1126, 1134-35 (Vt. 2008) (listing cases). Given that N.J.R.E. 410 "was patterned after Fed. R. Evid. 410," we are similarly persuaded by the "history of the federal rule." State v. Rodriguez, 280 N.J. Super. 590, 597 (App. Div. 1995). Such a

10                                                                    A-0591-13T2

reading accords with the above-stated rationale of both N.J.R.E. 410 and the Federal Rule, and "return[s] the parties to the position they were in at the beginning of the" plea negotiations. State v. Pennington, 154 N.J. 344, 362 (1998) (quoting State v. Barboza, 115 N.J. 415, 427 (1989)). Thus, we hold that N.J.R.E. 410 generally prohibits the use of any statement made during plea negotiations to impeach the person making the statement.

However, the United States Supreme Court in Mezzanatto went on to consider whether a defendant could waive the protections of the Federal Rule. We were careful in Brabham, supra, to note that "[n]either officer testified that defendant was told that what he said would be used against him." 413 N.J. Super. at 204. "Without any evidence that defendant was informed that the officers and the assistant prosecutor attended the meeting to collect incriminating statements to be used against defendant at trial, the facts . . . required exclusion of the statements pursuant to N.J.R.E. 410." Id. at 208. We thus consider the resolution of that issue under the Federal Rule.

The United States Supreme Court in Mezzanatto, supra, ruled that the protections of the Federal Rule may be waived by a defendant. 513 U.S. at 197, 115 S. Ct. at 800, 130 L. Ed. 2d at 702. The Court stressed that "[a] criminal defendant may

11

knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution," as well as the protection of statutes and procedural rules. Id. at 201-02, 115 S. Ct. at 801-02, 130 L. Ed. 2d at 704. This "presumption of waivability" also applies to evidentiary rules, and the parties' "agreements to waive evidentiary rules are generally enforceable even over a party's subsequent objections." Id. at 202, 115 S. Ct. at 802, 130 L. Ed. 2d at 704-05. The Court concluded that, "like other evidentiary privileges, [the Federal Rule] may be waived or varied at the defendant's request." Id. at 205, 115 S. Ct. at 803-04, 130 L. Ed. 2d at 707.

The Court in Mezzanatto found that waiving the Federal Rule's protections did not impair the reliability of the fact-finding process. Indeed, "[t]he admission of plea statements for impeachment purposes enhances the truth-seeking function of trials and will result in more accurate verdicts." Id. at 204, 115 S. Ct. at 803, 130 L. Ed. 2d at 706.

The Court also found "no basis for concluding that waiver will interfere with the Rules' goal of encouraging plea bargaining." Id. at 207, 115 S. Ct. at 804, 130 L. Ed. 2d at 707. "[I]f the prosecutor is interested in 'buying' the reliability assurance that accompanies a waiver agreement, then precluding waiver can only stifle the market for plea bargains."

_Id._ at 208, 115 S. Ct. at 805, 130 L. Ed. 2d at 708. "A sounder way to encourage settlement is to permit the interested parties to enter into knowing and voluntary negotiations without any arbitrary limits on their bargaining chips." _Ibid._

Accordingly, the United States Supreme Court in _Mezzanatto_ held that, "absent some affirmative indication that the agreement was entered into unknowingly or involuntarily, an agreement to waive the exclusionary provisions of the plea-statement Rules is valid and enforceable." _Id._ at 210, 115 S. Ct. at 806, 130 L. Ed. 2d at 710.

Most State courts which have addressed the issue have found the reasoning of _Mezzanatto_ persuasive in interpreting their own versions of the Federal Rule, and have ruled that defendants can waive their rules' protections. _See, e.g._, _State v. Campoy_, 207 P.3d 792, 803 (Ariz. Ct. App. 2009); _People v. Stevens_, 610 N.W.2d 881, 885-88 (Mich.), _cert. denied_, 531 U.S. 902, 121 S. Ct. 240, 148 L. Ed. 2d 172 (2000); _State v. Blom_, 682 N.W.2d 578, 617 (Minn. 2004); _Commonwealth v. Widmer_, 120 A.3d 1023, 1027-28 (Pa. Super. Ct. 2015); _State v. Wills_, 700 S.E.2d 266, 268-69 (S.C. Ct. App. 2010), _aff'd_, 762 S.E.2d 3, 4 (S.C. 2014).[5]

---

[5] _Cf._ _State v. Pitt_, 891 A.2d 312, 326 (Md. 2006) (distinguishing _Mezzanatto_ because in _Pitt_ the defendant's statements were used in the prosecution's case-in-chief, and noting that applying _Mezzanatto_ "would undermine" prior Maryland case law holding
(continued)

We believe Mezzanatto's persuasive reasoning is equally applicable to N.J.R.E. 410. Accordingly, we hold that a defendant can waive N.J.R.E. 410's protection against the use of any statement made during plea negotiations to impeach the person making the statement, and that such a waiver is valid and enforceable absent an affirmative indication that the waiver was entered into unknowingly or involuntarily.[6]

The Court in Mezzanatto, supra, found waiver where the prosecutor informed the defendant "that any statements he made during the meeting could be used to impeach any contradictory testimony he might give at trial if the case proceeded that far," and the defendant after conferring with counsel "agreed to proceed under the prosecutor's terms." 513 U.S. at 198, 115 S. Ct. at 800, 130 L. Ed. 2d at 702. Other courts have held that

---

(continued)
that admissibility turns on whether it was the defendant or the State that "rescinded or breached the plea agreement").

[6] Defendant also cites Rule 3:9-2, which provides: "If a plea of guilty is refused, no admission made by the defendant shall be admissible in evidence against the defendant at trial." However, Rule 3:9-2 protects "admissions made in a prior plea proceeding." Barboza, supra, 115 N.J. at 423. It is N.J.R.E. 410 which protects out-of-court "statement[s] made during plea negotiations." Ibid.; see Pressler & Verniero, Current N.J. Court Rules, comment 1.5.1 on R. 3:9-2 (2016). To the extent that Rule 3:9-2 applies to such out-of-court statements, the reasoning of Mezzanatto would be equally applicable. See Mezzanatto, supra, 513 U.S. at 200-06, 115 S. Ct. at 801-04, 130 L. Ed. 2d at 703-07 (applying its reasoning to Fed. R. Crim. P. 11(e)(6)).

when defendants are warned during plea negotiations that anything they say may be used against them at trial, and the defendants, with that understanding, proceed to make statements, there is a waiver under Mezzanatto. See, e.g., United States v. Sylvester, 583 F.3d 285, 287-94 (5th Cir. 2009), cert. denied, 559 U.S. 916, 130 S. Ct. 1313, 175 L. Ed. 2d 1096 (2010); Campoy, supra, 207 P.3d at 796, 802; Stevens, supra, 610 N.W.2d at 883, 888; Widmer, supra, 120 A.3d at 1025, 1027-28; Wills, supra, 700 S.E.2d at 267, 269, aff'd, 762 S.E.2d at 4.[7] We agree that the giving of such a warning can give rise to a waiver if the defendant, with that understanding, proceeds to give a statement.[8]

---

[7] These cases also find that a waiver after such a warning enables the prosecution to use the defendant's statements in its case-in-chief. Ibid.; see also United States v. Mitchell, 633 F.3d 997, 1004-06 (10th Cir. 2011); United States v. Hardwick, 544 F.3d 565, 569-70 (3d Cir. 2008). We need not reach that question, as the State requested and the trial court granted only use of the statement for impeachment. See Mezzanatto, supra, 513 U.S. at 211, 115 S. Ct. at 806, 130 L. Ed. 2d at 710 (Ginsburg, J., concurring) ("As the Government has not sought such a waiver, we do not here explore this question.").

[8] As in Mezzanatto, such a warning may be sufficient even if it does not explicitly mention Rule 410. See United States v. Young, 223 F.3d 905, 911 (8th Cir. 2000), cert. denied, 531 U.S. 1168, 121 S. Ct. 1133, 148 L. Ed. 2d 999 (2001); Stevens, supra, 610 N.W.2d at 888; cf. State v. Hinton, 42 S.W.3d 113, 124-26 (Tenn. Crim. App. 2000) (finding Miranda warnings were insufficient because they did not mention Tennessee's version of the Federal Rule). However, a written proffer agreement explicitly waiving N.J.R.E. 410 may enhance the clarity and
(continued)

Defendant makes three arguments why such impeachment should not be allowed. First, she contends that allowing impeachment will discourage plea bargaining. However, "[p]lea bargaining has become firmly institutionalized in this State." State v. Means, 191 N.J. 610, 618 (2007) (quoting State v. Taylor, 80 N.J. 353, 360-61 (1979)). As in the federal system, "the vast majority of all cases are resolved through plea agreements with the State." State v. Munroe, 210 N.J. 429, 447-48 (2012). As explained in Mezzanatto, supra, "there is no reason to believe that allowing negotiation as to waiver of the plea-statement Rules will bring plea bargaining to a grinding halt; it may well have the opposite effect." 513 U.S. at 209, 115 S. Ct. at 805, 130 L. Ed. 2d at 708-09. Indeed, plea bargaining is flourishing in the federal courts since Mezzanatto. See Lafler v. Cooper, __ U.S. __, __, 132 S. Ct. 1376, 1388, 182 L. Ed. 2d 398, 411 (2012) ("Ninety-seven percent of federal convictions . . . are the result of guilty pleas").

Moreover, waiver can occur only if both parties agree. If the parties have goals that can be "gained only by preserving

---

(continued)
enforceability of a waiver. See State v. Diorio, 422 N.J. Super. 445, 460 (App. Div. 2011) (quoting a proffer agreement in which the defendant "knowingly and voluntarily waives any right [the defendant] has pursuant to N.J.R.E. 410"), aff'd in part, rev'd in part on other grounds, 216 N.J. 598, 609-10 n.4 (2014).

A-0591-13T2

the inadmissibility of plea statements, they will agree to leave intact the exclusionary provisions of the plea-statement Rules." Mezzanatto, supra, 513 U.S. at 208, 115 S. Ct. at 805, 130 L. Ed. 2d at 708.

Second, defendant argues such impeachment is unnecessary and should not be allowed because N.J.R.E. 410 makes a defendant's statements during plea negotiations admissible "in a criminal proceeding for perjury." However, the Court in Mezzanatto, supra, allowed waiver and impeachment even though the Federal Rule similarly made such statements admissible "in a criminal proceeding for perjury." 513 U.S. at 200 n.1, 115 S. Ct. at 801 n.1, 130 L. Ed. 2d at 703 n.1 (quoting Fed. R. Evid. 410 (eff. 1980)). The Court stressed that using such statements for impeachment preserved the integrity of the verdict and the trial process. Id. at 204, 115 S. Ct. at 803, 130 L. Ed. 2d at 70. If "the defendant has made a false statement, either to the prosecutor during the plea discussion or to the jury at trial[,] making the jury aware of the inconsistency will tend to increase the reliability of the verdict without risking institutional harm to the [trial] courts." Id. at 205, 115 S. Ct. at 803, 130 L. Ed. 2d at 706; see also State v. Hawkins, 316 N.J. Super. 74, 82 (App. Div. 1998) (finding it reasonable to relax N.J.R.E. 410 at sentencing "to rebut a contrary factual contention expressly

or inferentially raised" by the defendant), <u>certif. denied</u>, 162 <u>N.J.</u> 489 (1999).

Moreover, allowing such impeachment is supported by the rulings of both our Supreme Court and the United States Supreme Court permitting the use of even constitutionally-inadmissible statements to impeach defendants' trial testimony. The United States Supreme Court in <u>Harris v. New York</u>, 401 <u>U.S.</u> 222, 91 <u>S. Ct.</u> 643, 28 <u>L. Ed.</u> 2d 1 (1971), and its progeny, has long authorized such impeachment in order "'to prevent perjury and to assure the integrity of the trial process.'" <u>Kansas v. Ventris</u>, 556 <u>U.S.</u> 586, 593, 129 <u>S. Ct.</u> 1841, 1846, 173 <u>L. Ed.</u> 2d 801, 808 (2009) (citation omitted). Our Supreme Court has repeatedly agreed. <u>See, e.g.</u>, <u>State v. Francis</u>, 191 <u>N.J.</u> 571, 594-95 (2007); <u>State v. Harris</u>, 181 <u>N.J.</u> 391, 439-40 (2004), <u>cert. denied</u>, 545 <u>U.S.</u> 1145, 125 <u>S. Ct.</u> 2973, 162 <u>L. Ed.</u> 2d 898 (2005); <u>State v. Burris</u>, 145 <u>N.J.</u> 509, 521-25 (1996); <u>State v. Irving</u>, 114 <u>N.J.</u> 427, 438-39 (1989); <u>State v. Miller</u>, 67 <u>N.J.</u> 229, 232-34 (1975). Those cases emphasized that "'inadmissibility would pervert the constitutional right into a right to falsify free from the embarrassment of impeachment evidence from the defendant's own mouth.'" <u>Burris</u>, <u>supra</u>, 145 <u>N.J.</u> at 523 (quoting <u>Oregon v. Hass</u>, 420 <u>U.S.</u> 714, 723, 95 <u>S. Ct.</u> 1215, 1223, 43 <u>L. Ed.</u> 2d 570, 578 (1975)).

The trial court relied on the <u>Harris</u> line of cases, including <u>Burris</u> and <u>Ventris</u>, to create an impeachment exception to <u>N.J.R.E.</u> 410. As stated above, however, <u>N.J.R.E.</u> 410 does not permit a defendant's statements during plea negotiations to be used for impeachment, unless the defendant waives the protections of the rule. <u>See also</u> <u>State v. Boone</u>, 66 <u>N.J.</u> 38, 46-49 (1974) (declining to extend <u>Harris</u> and rejecting "the view that withdrawn pleas are admissible to impeach the credibility of the defendant who elects to testify at his trial"). Thus, we cannot affirm based on the grounds adopted by the trial court.

It is well-established that a reviewing court can affirm a decision on different grounds than those authorities offered by the court being reviewed. <u>See, e.g.</u>, <u>Shim v. Rutgers</u>, 191 <u>N.J.</u> 374, 378 (2007); <u>State v. Nellom</u>, 178 <u>N.J.</u> 192, 196 (2003); <u>Isko v. Planning Bd. of Livingston</u>, 51 <u>N.J.</u> 162, 175 (1968); <u>see</u> <u>State v. McLaughlin</u>, 205 <u>N.J.</u> 185, 194-95 (2011). As stated above, waiver under <u>Mezzanatto</u> provides an alternate basis for affirmance.

Here, we believe it is appropriate to remand to allow the trial court and the parties to address in the first instance whether defendant waived the protection against having her formal statement used for impeachment, as provided by <u>N.J.R.E.</u> 410. <u>See generally</u> <u>State v. Puryear</u>, 441 <u>N.J. Super.</u> 280, 297,

299 (App. Div. 2015) ("the question of whether Miranda rights are knowingly, intelligently and voluntarily waived is a fact-specific analysis," and appellate courts defer to trial courts' factual findings).  Thus, we remand for a hearing conducted "in light of the principles to which we have adverted."  Shim, supra, 191 N.J. at 392.

On remand, the trial court shall consider if defendant made a knowing and voluntary waiver of the protection against having her formal statement used against her at trial for impeachment. The court shall consider whether defendant had the benefit of advice of counsel, as in Mezzanatto.[9]  If the court determines that defendant did not waive that protection, it shall consider whether its earlier ruling that defendant could be impeached with her formal statement was harmless under R. 2:10-2.

Defendant claims she did not testify after that ruling because her formal statement was highly prejudicial.  Our Supreme Court has recognized "the difficulty of characterizing as harmless a trial court's error in ruling that the defendant's prior convictions may be used for impeachment purposes" when that ruling causes a defendant not to testify.  State v. Whitehead, 104 N.J. 353, 359 (1986).  Our Court noted that "the

---

[9] Here, we are not called upon to address a waiver agreement entered into without the advice of counsel.

United States Supreme Court has stated that almost any error would result in automatic reversal because 'the appellate court could not logically term "harmless" an error that presumptively kept the defendant from testifying.'" Ibid. (quoting Luce v. United States, 469 U.S. 38, 42, 105 S. Ct. 460, 463-64, 83 L. Ed. 2d 443, 448 (1984)); see also State v. Singleton, 308 N.J. Super. 407, 413-14 (App. Div. 1998) (finding plain error). The trial court should apply the same principles here.

> **[At the direction of the court, the published version of this opinion omits Part III (which upholds the denial of defendant's motion to dismiss the indictment), Part IV (which upholds the denial of her motion for acquittal and rejects her challenge to the chain of custody), Part V (which rejects her challenge to the jury instruction), Part VI (which upholds the denial of her motion to suppress), and Part VII (which upholds the denial of her request to reveal the identity of the confidential informant). See R. 1:36-3.]**

Accordingly, we affirm the judgment of conviction, subject to a remand for a hearing on whether defendant waived her right to keep her formal statement from being used for impeachment. We reject defendant's other arguments. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION